UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHAWANDA V COLLINS,

        Plaintiff,

v.

        Case No. 24-cv-0490-bhl

UNITED STATES OF AMERICA, et al,

        Defendants.

## SCREENING ORDER

On April 24, 2024, Plaintiff Shawanda V. Collins, proceeding *pro se*, filed a complaint against Advocate Aurora Health, Inc. (Aurora),[1] the Centers for Medicare & Medicaid Services (CMS), the Wisconsin Department of Health Services (WDHS), and nineteen individuals allegedly employed by those entities. The Court screened her complaint on May 21, 2024 and concluded that Collins had failed to state any cognizable federal claims for relief. (ECF No. 3.) The Court encouraged her to consider proceeding with state law tort claims in state court but nevertheless allowed her the chance to file an amended complaint if she wished to continue this lawsuit, and she did so on July 8, 2024. (*See* ECF No. 6.) Collins's amended complaint adds the United States of America, the U.S. Department of Health and Human Services (HHS) and several federal officials as defendants, but she has still not alleged plausible claims that are subject to this Court's jurisdiction. Because Collins's amended complaint still does not state a federal claim, it will be dismissed and this time without leave to amend.

### SCREENING THE COMPLAINT

In screening a *pro se* complaint, the Court applies the liberal pleading standards embraced by the Federal Rules of Civil Procedure. To survive screening, the complaint must comply with the Federal Rules and state at least plausible claims for which relief may be granted. To state a cognizable claim, a plaintiff is required to provide a "short and plain statement of the claim

---

[1] Collins's amended complaint instead names Advocate Aurora St. Luke's Medical Center as a defendant. For simplicity's sake, the Court will also refer to that defendant as "Aurora."

showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). If the complaint fails to allege sufficient facts to state a claim on which relief may be granted, it must be dismissed. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1018 (7th Cir. 2013).

## ALLEGATIONS OF THE COMPLAINT[2]

Collins's amended complaint relates to the death of her mother, Veronica Lee Collins Dixon, while she was under Aurora's care. Dixon apparently began receiving medical treatment at Aurora St. Luke's Medical Center on July 14, 2021, after she presented with bilateral leg pain, malnutrition, and shortness of breath. (ECF No. 6 ¶21.) Dixon received various treatments during a 10-day inpatient stay at Aurora St. Luke's. (*Id.* ¶¶21–26.) The pleading does not specify when Dixon passed but alleges that she died because of Aurora's negligent care. (*Id.* ¶¶27–29.)

While Dixon was receiving care, Collins contends that Aurora staff Felisa Antonchorgy, Elizabeth Hafemann, Hope Borland, and Nanette Kloth made false allegations against Collins to prevent her from visiting her mother. (*Id.* ¶32.) Nurse Antonchorgy also falsely noted on Dixon's chart that she had received "various permissions" from Dixon's authorized power of attorney, but

---

[2] The Court accepts the allegations in the complaint as true at screening. *See Perez v. Fenoglio*, 792 F.3d 768, 774 (7th Cir. 2015).

Dixon did not have a power of attorney. (*Id.*) On July 15, 2021, Collins left a message for Aurora supervisor Sarah Thorn explaining concerns she had about Dixon's medical team and requesting that Dixon be moved to another floor and medical team. (*Id.* ¶35.) Collins spoke with someone at Aurora that same day and again requested that her mother be transferred to another floor. (*Id.*) The next day, Antonchorgy, Hafemann, Borlan, and Kloth falsely accused Collins of saying that she "was going to SHOOT UP the hospital" and falsely portrayed her as an "angry black woman" so she would be barred from visiting Dixon. (*Id.* ¶36.) Aurora security officers investigated the accusation and found it to be false, after which the staff members instead claimed they were afraid of Collins. (*Id.*) The Aurora staff members also claimed Collins "threatened a nurse" and was escorted out of the hospital, but security found no surveillance video showing Collins being escorted out. (*Id.*) Aurora staff also turned off the phone in Dixon's room and did not allow Collins to visit or speak with her mother. (*Id.* ¶37.)

The amended complaint also generally alleges that Aurora, CMS, WDHS, and various related federal and state officials acted in various improper ways in relation to Dixon's treatment. Collins alleges that U.S. Secretary of Health and Human Services Xavier Becerra and CMS Administrator Chiquita Brooks-Lasure have "failed in their duty to protect hospital patients from harm" through the "interpretation and implementation of [f]ederal regulations, processes, procedures, instructional manuals, and reporting tools." (*Id.* ¶61.) This has allowed "unethical hospitals to systemically kill their [patients]," including Dixon. (*Id.*) Additionally, CMS has allowed Aurora "to collect benefits on these deaths for years" without accreditation. (*Id.*) Collins alleges that African Americans "have suffered by having their lives ended prematurely for monetary gain" and have been disparately impacted by CMS's failure to protect patients. (*Id.* ¶¶62–67.) Collins makes similar allegations against WDHS. (*Id.* ¶¶75–80, 89–91.) She also alleges that WDHS employees Kelly Terrab and Ashley Ayres did not adequately investigate complaints she made with WDHS against Aurora and, thus, "became willing participants in what can only be described as malicious, vengeful, traumatic, and devastating." (*Id.* ¶¶75, 80–88.)

Based on these factual allegations, Collins asserts six "counts," each of which encompasses multiple causes of action and sources of law, both within the headings themselves and in underlying text. Collins invokes 42 U.S.C. § 1983, Title VI of the Civil Rights Act of 1964, the Administrative Procedure Act, the Patient Safety and Quality Improvement Act, Title XIX of the Social Security Act, the Federal Tort Claims Act, the Affordable Care Act, the Fifth and Fourteenth

Amendments to the U.S. Constitution and a number of federal regulations. Collins also asserts tort claims for defamation, negligence, and intentional infliction of emotion distress, as well as "deliberate indifference" and "disparate impact and disparate treatment." She also repeatedly asserts violations of the "Deceptive Trade Practices Act."

Collins brings these claims against a list of defendants that includes the United States of America, the U.S. Department of Health & Human Services, CMS, federal officials Becerra and Brooks-Lasure, WDHS and its employees Terrab and Ayres, and Aurora and its employees Antonchorgy, Borland, Kloth, and Hafemann. Collins does not specify which claims are brought against which defendants.

## ANALYSIS

Collins's amended complaint is difficult to parse. It is replete with references to inapplicable and sometimes nonexistent statutes, irrelevant case law, and confusing allegations. It could likely be dismissed on these grounds alone. *See United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud."). Nonetheless, the Court will again try to review Collins's latest pleading to determine whether the allegations might support a plausible claim. In doing so, the Court is mindful that *pro se* complaints are held to a less stringent standard than a formal pleading drafted by a lawyer. *See Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). The Court will begin by analyzing Collins' proposed federal claims, which are key to securing this Court's jurisdiction. The Court will analyze those claims as they relate to groups of defendants, beginning with Aurora and its employees, then addressing potential federal defendants (including the United States and various federal agencies and officials), and then finally reviewing potential claims against WDHS and its employees. Because Collins has not adequately pleaded any federal claims against any of these defendants, her amended complaint will be dismissed.

**A. Aurora Defendants**

In the sections of the amended complaint dedicated to her allegations against Aurora and its staff, Collins cites Title VI, the First and Fourteenth Amendments, Title XIX of the Social Security Act, the Patient Safety and Quality Improvement Act, 42 C.F.R. § 482.13(f)(2)(h), and the Deceptive Trade Practices Act. (*See* ECF No. 6 at 9–17.) Most of these federal laws cannot support a lawsuit against Aurora or its employees. As the Court explained in its first screening

order, Aurora and its employees are not state actors and thus are not proper defendants for claims based on alleged constitutional violations. (ECF No. 3 at 4.) Collins fares no better alleging violations of the "Deceptive Trade Practices Act" because there is no such federal statute. She also cites 42 C.F.R. § 482.13 and while there is such a regulation, it generically requires hospitals participating in the Medicare program to protect and promote patients' rights but does not provide for a private cause of action for Collins or her mother's estate. *See Pantaleo v. Hayes*, No. 08-C-6419, 2013 WL 5311450, at *5 n.13 (N.D. Ill. Sept. 20, 2013). Moreover, there does not appear to be a subsection (f)(2)(h), which is the provision Collins invokes. Collins' invocation of Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, is similarly misplaced. This statute governs the Medicaid program. *Harris v. McRae*, 448 U.S. 297, 301 (1980). Even if Aurora could have violated Title XIX, Collins was not an Aurora patient and the Court has previously explained that she cannot bring a lawsuit *pro se* on behalf of her mother. (*See* ECF No. 3 at 4.) The Patient Safety and Improvement Act of 2005 similarly has no relation to Collins's allegations against Aurora.

Of the federal laws Collins invokes, only Title VI of the Civil Rights Act could potentially provide the basis for a claim against Aurora. Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. A private individual may bring a Title VI claim to obtain both damages and injunctive relief, but only on the basis of intentional discrimination. *Alexander v. Sandoval*, 532 U.S. 275, 279–93 (2001). And a Title VI claim may only be brought against an entity receiving federal funds, not an individual. *See Smith v. Metro. Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1019–20 (7th Cir. 1997) (Title IX claims may not be brought against individuals); *Patterson v. Mclean Cnty. Sheriff's Dep't*, No. 1:20-cv-01073, 2021 WL 2403436, at *9 (C.D. Ill. June 11, 2021) (collecting cases). To state a claim under Title VI, Collins must plausibly allege that a defendant (1) intentionally discriminated against her due to her race; and (2) that the defendant is a recipient of federal funds. *Khan v. Midwestern Univ.*, 147 F. Supp. 3d 718, 720 (N.D. Ill. 2015).[3]

---

[3] The Court will assume, without deciding, that Collins is within the "zone of interests" Title VI was enacted to protect. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014).

Collins does not plausibly allege that Aurora intentionally discriminated against her due to her race. According to the amended complaint, Collins was familiar with the medical team treating her mother because she previously had power of attorney for a patient under their care and had the patient removed from the team's care. (*Id.* ¶33.) On July 15, 2021, Collins spoke with someone from Aurora's risk management department. (*Id.* ¶35.) During that call, she made complaints about the medical team caring for her mother and requested that her mother be transferred to another team's care. (*Id.*) The next day, "*in retaliation for the complaint and the request . . . to have her mother moved*, Aurora . . . [s]taff . . . falsely accused Ms. Collins of stating '[she] was going to SHOOT UP the hospital' to get her barred from visiting her mother." (*Id.* ¶36 (emphasis added).) Collins also alleges that Aurora staff falsely stated that she threatened a nurse and was escorted out of the hospital and that she threw a brick through a hospital window. (*Id.* ¶¶36, 85.) None of these allegations plausibly suggests discrimination based on race or any other protected category.

Elsewhere in her amended complaint, Collins asserts that she was "falsely portrayed . . . as an 'angry black female' provoking discriminatory actions based on their racial profiling and their hate speech." (*Id.* ¶36.) But this lone allegation in insufficient to support a claim. The balance of her allegations relate to her dissatisfaction with her mother's treatment. No facts suggest that Aurora staff discriminated against Collins because of her race. In fact, the amended complaint explicitly alleges that Aurora staff retaliated against her complaining about them and requesting to have a second patient removed from their care, an issue unrelated to her race. While the Court must draw all reasonable inferences in Collins's favor at the screening stage, the factual allegations in her amended complaint simply do not support a reasonable inference that Aurora or its staff intentionally discriminated against Collins due to her race. A conclusory statement that she was portrayed as an "angry black female," unsupported by her factual allegations, is insufficient to survive Rule 8. *See Iqbal*, 556 U.S. at 678. Accordingly, Collins has not stated any federal claims against Aurora or its employees.

## B. Federal Defendants

Collins's allegations against the United States, HMS, CMS, and federal officials Becerra and Brooks-Lasure are also insufficient to support a federal claim. Foremost among the problems is that Collins lacks standing to bring the type of generalized grievances she asserts. The doctrine of standing requires a plaintiff to have a "personal stake" in the outcome of the case. *TransUnion*

*LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)). To establish standing, a plaintiff must show: (1) an injury-in-fact; (2) that is fairly traceable to the defendant; and (3) likely to be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). At the pleading stage, a plaintiff must "clearly allege facts demonstrating" each element of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

The United States Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to [her] and every citizen's interest in proper applications of the Constitution and laws, and seeking relief that no more directly and tangibly benefits [her] than it does the public at large—does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573. This is precisely the manner of grievance Collins wishes to bring against the United States and the named federal agencies and officials. She alleges that "through interpretation and implementation of [f]ederal regulations, processes, procedures, instructional manuals and reporting tools," they "failed in their duty to protect hospital patients from harm." (ECF No. 6 ¶61.) While Collins attempts to tie these global allegations to Dixon's death, she fails to provide factual allegations against any of the federal defendants that provide a plausible causal connection between their actions and Dixon's death. Thus, even assuming Dixon's death constitutes an injury-in-fact to Collins, that injury is not fairly traceable to any of the federal defendants.

Contrary to Collins's suggestion, (*see id.* ¶3), the Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), did not empower plaintiffs to launch overbroad, generalized attacks on federal agencies' implementation of their own regulations. Nor can Collins overcome her lack of standing through vague assertions of "disparate treatment" and "disparate impact" on African Americans. Because Collins lacks standing to bring the generalized allegations she raises against the federal defendants, her claims against those defendants must be dismissed.

### C. WDHS Defendants

Collins's claims against WDHS and WDHS employees Terrab and Ayres suffer from similar deficiencies. Collins cannot sustain a federal lawsuit with generalized allegations that WDHS "through processes, procedures and instructional manuals failed in their duty to protect hospital patients from harm." (ECF No. 6 ¶90.) Collins does make some specific allegations

related to "multiple complaints" she placed with WDHS about Aurora's actions. (*Id.* ¶75.) However, her allegation that Terrab and Ayres "failed to verify if the information" in Dixon's medical record was true is insufficient to state a claim under Title VI, 42 U.S.C. § 1983, or any other federal cause of action. Collins has not plausibly alleged that Terrab, Ayres, or anyone with WDHS violated her constitutional rights, discriminated against her on account of her race, or otherwise interfered with her federal rights. Collins's apparent dissatisfaction with the result of WDHS's investigation into her complaints against Aurora is not a sufficient basis for a federal lawsuit against a state agency or its employees. Accordingly, her federal claims against those defendants must be dismissed as well.

## CONCLUSION

Because Collins fails to state federal claims against any defendant, her amended complaint will be dismissed. While Collins invokes the Court's diversity jurisdiction under 28 U.S.C. § 1332, she fails to adequately allege that she is a citizen of a different state than each of the defendants. *See Bontkowski v. Smith*, 305 F.3d 757, 763 (7th Cir. 2002). Thus, the Court may appropriately decline to exercise supplemental jurisdiction over Collins's state-law tort claims for defamation, negligence, and intentional infliction of emotional distress. *See* 28 U.S.C. § 1367(c)(3); *Van Harken v. City of Chicago*, 103 F.3d 1346, 1354 (7th Cir. 1997) ("The general rule is that when as here the federal claim drops out before trial (here *way* before trial), the federal district court should relinquish jurisdiction over the supplemental claim."). As the Court stated in its initial screening order, Collins may have viable state law claims against Aurora and its employees. But those claims must be pursued in state court.

The Court has provided Collins with two chances to state a viable federal claim for relief against one or more defendants. Her amended complaint comes no closer to that aim than her initial effort, and the Court concludes that further leave to amend is unwarranted. *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("Leave to amend need not be granted, however, if it is clear that any amendment would be futile."). Accordingly, Collins's federal claims against all defendants are dismissed with prejudice. Because the Court declines to exercise supplemental jurisdiction over her state-law claims, those claims are dismissed without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Collins's amended complaint, ECF No. 6, and this suit are **DISMISSED** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and for lack

of subject-matter jurisdiction. All federal claims against all defendants are **DISMISSED with prejudice**. All state law claims are **DISMISSED without prejudice**. The Clerk is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that Collins's motions for e-file privileges, ECF No. 2, and to extend the time to serve, ECF No. 7, are **DENIED as moot**.

Dated at Milwaukee, Wisconsin on August 23, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge