SHAWANDA V COLLINS,

        Plaintiff,

v.

                                      Case No. 24-cv-0490-bhl

ADVOCATE AURORA HEALTH INC, et al,

        Defendants.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

        Plaintiff Shawanda V. Collins, proceeding *pro se*, is pursuing claims against Advocate Aurora Health Inc. (Aurora)[1] based on allegations that it discriminated against her based on her race and prevented her from visiting her dying mother when her mother was a patient at Aurora St. Luke's Medical Center. The Court screened and dismissed Collins's initial and amended complaints, (ECF Nos. 3 & 8), but the Seventh Circuit reversed and remanded the case for further proceedings on Collins's claim under Title VI of the Civil Rights Act, (ECF No. 17). With the Court's permission, Collins has filed a second amended complaint asserting claims for: (1) discrimination in violation of Title VI; (2) negligent retention and supervision; (3) negligence; (4) defamation; and (5) a violation of the Wisconsin Patient Rights Act (WPRA). (ECF No. 22.) Aurora has moved to dismiss. (ECF No. 27.)

### MOTION TO DISMISS STANDARD

        When deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff's favor." *Roberts v. City of Chi.*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). "To survive a motion to dismiss, the complaint must 'state a claim to relief that is plausible

---

[1] Collins identifies "Aurora Health Care Metro (Collectively)," "Aurora St. Lukes Medical Center," and "Aurora Sinai Medical Center" as defendants in the caption of her second amended complaint. (ECF No. 22.) She names "Advocate Aurora Health, Inc." as a defendant in the body of her pleading. (*Id*. ¶6.) The Court will interpret the second amended complaint as asserting claims against "Advocate Aurora Health Inc." the corporate entity named in the body of the pleading. It is that entity that was served and is responding to the pleading. (ECF Nos. 23 & 27.)

on its face.'" *Roberts*, 817 F.3d at 564 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 564–65 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The complaint must do more than recite the elements of a cause of action in a conclusory fashion." *Id.* at 565 (citing *Iqbal*, 556 U.S. at 678).

## ALLEGATIONS OF THE COMPLAINT

Collins's claims relate to the death of her mother, Veronica Lee Collins Dixon, while Dixon was an Aurora patient. (ECF No. 22 ¶1.) Dixon began receiving medical treatment at Aurora St. Luke's Medical Center on July 14, 2021, after presenting with bilateral leg pain, malnutrition, and shortness of breath. (*Id.* ¶13.) The week before she arrived at the Aurora hospital, Dixon had been a patient at another Milwaukee-area facility, Froedtert Medical Center, with the same symptoms. (*Id.*) The medical team at Froedtert concluded that Dixon's medications were a major factor in her symptoms and discontinued them. (*Id.*)

After arriving at Aurora St. Luke's, Dixon received a variety of treatments over a 10-day stay. (*See id.* ¶¶15–20.) Collins informed Nurse Elizabeth Hafemann that Dixon was "diuretic resistant," and Aurora St. Lukes personnel were aware that Dixon had not eaten for a month. (*Id.* ¶15.) Aurora St. Lukes staff nevertheless adopted a course of treatment contrary to the applicable standards of care and contrary to Froedtert's assessment, causing multiple complications for Dixon, who ultimately suffered a preventable death. (*Id.* ¶22.)

While Dixon was receiving care, Collins expressed concerns about her mother's treatment to Aurora staff and asked that Dixon be reassigned to a different medical team. (*Id.* ¶23.) Hospital staff responded by falsely accusing her of making threats to "shoot up the hospital." (*Id.* ¶24.) Collins believes these accusations were "rooted in discriminatory racial profiling." (*Id.*) Collins further believes that it was due to these false accusations that she was barred from visiting her mother. (*Id.* ¶25.) Even after Collins escalated her concerns with Aurora, she remained barred from visiting her mother. (*See id.* ¶¶26–32.)

## ANALYSIS

Aurora urges the Court to dismiss Collins's second amended complaint in its entirety and with prejudice for a variety of reasons. (ECF No. 28.) Aurora first contends that Collins's Title VI claim fails because, as a hospital visitor, she does not fall within the "zone of interests"

protected by the statute. It also argues that Collins's allegations fail to state a claim under Title VI. Aurora next asserts that Collins's claims are untimely and barred by the applicable statute of limitations. Finally, Aurora contends that Collins fails to state an actionable claim under the WPRA and the other Wisconsin statute she invokes. The Court will address each argument in turn.

I.  **Collins Has Adequately Pleaded a Title VI Claim.**

Collins's sole federal claim is under Title VI. She claims Aurora violated Title VI by discriminating against her based on her race while she was attempting to visit and secure medical care for her mother. In support of this claim, Collins alleges that Aurora hospital staff falsely accused her of making violent threats and restricted her access to her mother, all because of her race and national origin. (ECF No. 22 ¶¶36–37.) She contends she reported the discrimination to Aurora's Risk Management team and security officers, but the discrimination continued. (*Id.* ¶¶30–32.)

    **A. Collins's Allegations Sufficiently Put Her within Title VI's Zone of Interests.**

Aurora argues that Collins cannot sue for discrimination under Title VI because she is not within the "zone of interests" protected by the statute. (ECF No. 28 at 4–9.) According to Aurora, Title VI does not provide a remedy for this alleged discrimination because Collins was a mere "visitor" to the hospital and not a patient. (*Id.*) The Seventh Circuit's remand order flagged this issue without resolving it. (*See* ECF No. 17 at 4–5.)

In *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), the Supreme Court explained that a plaintiff must be within the "zone of interest" of a federal statute to bring suit under the legislation. *Lexmark* involved a toner remanufacturer's attempt to assert false designation of origin claims under the Lanham Act against a toner manufacturer. *Id.* at 122. The district court dismissed the counterclaim on "prudential standing" grounds, but the Sixth Circuit concluded the plaintiff had standing and reversed. *Id.* at 123–24. The Supreme Court affirmed the Sixth Circuit but took pains to repudiate the lower courts' characterization of the issue as one of "prudential standing." *Id.* at 127–28. The Court emphasized that the relevant question was one of statutory interpretation: "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Id.* at 127. Because the remanufacturer's claim fell within the zone of interests of the false advertising provisions in the Lanham Act, the Court agreed with the Sixth Circuit that dismissal of the counterclaim was incorrect. *Id.* at 131–32.

The Seventh Circuit has not applied *Lexmark* in the Title VI context but has analyzed the "zone of interests" approach in connection with a claim under the anti-discrimination provisions in the Affordable Care Act (ACA). *See T.S. by & through T.M.S. v. Heart of CarDon, LLC*, 43 F.4th 737, 740–41 (7th Cir. 2022). In *Heart of CarDon*, an autistic child sued an employee health benefit plan for disability discrimination based on the plan's denial of coverage for certain autism treatments. *Id*. at 738. The district court rejected a motion for judgment on the pleadings based on the defendant's argument that the plaintiff was not within the zone of interests protected by the statute. *Id*. at 741. In affirming the district court's ruling, the Court of Appeals turned first to the terms of the anti-discrimination provision in the ACA, which provided that "'an individual shall not,' on various grounds including disability, 'be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any health program or activity, any part of which is receiving Federal financial assistance[.]'" *Id*. at 739. While the statute did not explicitly identify its purpose, the Court concluded the statutory language made clear the scope of interests protected: it "'outlaw[ed] discrimination' on enumerated grounds 'by healthcare entities receiving federal funds.'" *Id*. at 741 (quoting *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 218 (2022). The Seventh Circuit explained that Congress had linked the prohibition to federal funding "to prevent federal resources from supporting discriminatory conduct" and authorized a private right of action "to provide individuals a means of protecting themselves from such conduct." *Id*. Because the plaintiff alleged the defendant was a healthcare entity that designed and controlled a health benefit plan so as to exclude him from coverage because of his autism, the Court of Appeals held the plaintiff's claim fell within the zone of interests of ACA's non-discrimination provision. *Id*.

The Court of Appeals rejected two arguments against this "straightforward analysis." *Id*. at 742. First, the Court declined the plan's invitation to limit actionable discrimination claims to those made by patients of health care entities that received federal funding. *Id*. The Court concluded that the statute allowed claims by plan participants like the plaintiff, reasoning that the statute forbade discrimination against any "individual" not simply against any "patient." *Id*. It noted that the victim's allegation that he was the direct victim of the "particular ill (intentional disability discrimination)" prohibited by the statute placed him "squarely" within the interests the statute was intended to protect. *Id*. The Seventh Circuit also rejected the plan's effort to narrow the zone of interests to patients who were discriminated against by the specific units of the plan's

business that received federal funds. *Id*. Citing the plain language of the statute, the Seventh Circuit reasoned that the statute applied to discrimination in connection with "any health program or activity" and this broad language encompassed the plaintiff's claims. *Id*. at 742–43.

Under *Lexmark* and the Seventh Circuit's "straightforward analysis" from *Heart of CarDon*, Collins's allegations are sufficient to support a claim under Title VI. As explained in *Lexmark*, the question is a matter of statutory interpretation and whether the "legislatively conferred cause of action" under Title VI "encompasses" Collins's claim. 572 U.S. at 127. Title VI's discrimination prohibition is almost identical to the anti-discrimination provision in the ACA that the Seventh Circuit analyzed in *Heart of CarDon*. Title VI provides:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. §2000d.

The only differences between this language and the non-discrimination prohibition in the ACA are that the ACA provision uses the word "individual" rather than "person" and includes the modifier "health care" before program or activity. Both statutes serve the same purpose: prohibiting discrimination by entities receiving federal funds. Indeed, the Supreme Court has stated that Congress enacted Title VI to "avoid the use of federal resources to support discriminatory practices" and "to provide individual citizens effective protection against those practices." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998). Like the plan beneficiary who alleged disability discrimination in *Heart of CarDon*, Collins's allegations place her within the zone of interests of the statute she invokes. She alleges that Aurora is an entity that receives federal funds and that she was subjected to discrimination in connection with Aurora's activities as a health care services provider. Applying the Seventh Circuit's analysis in *Heart of CarDon*, this is sufficient.

Aurora argues that Collins falls outside Title VI's zone of interests because she alleges "no plausible connection between her status as a hospital visitor and the purposes of Title VI." (ECF No. 28 at 5.) Aurora does not explain how this position is consistent with its subsequent concession that the purpose of Title VI is to "'avoid the use of federal resources to support discriminatory practices.'" (*Id*. (quoting *Parker v. Franklin Cnty. Cmty. Sch. Corp*., 667 F.3d 910, 917 (7th Cir. 2012)).) The plausible connection between Collins's claim and Title VI seems clear—she alleges

she faced discrimination at the hands of a health care provider who receives federal funding. This puts her in the position of a direct victim of the "particular ill (intentional . . . discrimination)" prohibited by Title VI and her claim falls "squarely" within the interests protected by the statute. *See Heart of CarDon*, 43 F.4th at 742. Aurora also fails to explain how its suggestion that Title VI's discrimination ban applies only to hospital patients, not visitors, is consistent with the Seventh Circuit's rejection of essentially the same argument in *Heart of CarDon*. Much like the non-discrimination provision in the ACA, Title VI precludes discrimination against any "person" not any "patient." Thus, nothing in the plain terms of Title VI suggests its discrimination bar does not reach discrimination against visitors to health care providers.

Aurora also suggests that Collins's claim falls outside Title VI's zone of interest because she does not allege that Aurora discriminated against her intentionally. (ECF No. 28 at 8–9.) This is simply wrong. Collins alleges that "Defendants, through their agents and employees, *intentionally discriminated against Plaintiff* based on her race." (ECF No. 22 ¶37 (emphasis added).) While Aurora may deny any intent to discriminate and may seek to establish through discovery that there is no evidence of intentional discrimination beyond Collins's speculation concerning Aurora staff's motives, Collins has specifically alleged intentional discrimination based on race, conduct that is prohibited by Title VI.

### B. Collins's Second Amended Complaint States a Title VI Claim.

Aurora next argues that even if Collins is an appropriate plaintiff under Title VI, she has nevertheless failed to state a Title VI claim. (ECF No. 28 at 9.) Citing two Title IX cases, *Smith v. Metropolitan Sch. District Perry Township*, 128 F.3d 1014 (7th Cir. 1997) and *Doe v. St. Francis School District*, 694 F.3d 869 (7th Cir. 2012), Aurora argues that Collins cannot pursue a Title VI claim unless she pleads that an official with authority to take corrective measures had actual knowledge of the discriminatory conduct and was then deliberately indifferent to the discrimination. (ECF No. 28 at 10.) Aurora argues that Collins's second amended complaint only alleges discrimination by Aurora employees, not high-level officials, and thus Collins has failed to state a Title VI claim. (*Id.*)

In the Title IX context, the Seventh Circuit has confirmed that a plaintiff cannot rely upon imputed or vicarious liability. *See St. Francis Sch. Dist.*, 694 F.3d at 871 (Title IX case). Other courts have applied this reasoning to Title VI. *See Jones v. City of Detroit*, 20 F.4th 1117 (6th Cir. 2021) (applying standard in Title VI case); *Shebley v. United Cont'l Holdings, Inc.*, No. 17-cv-

01906, 2020 WL 2836796, at *5–7 (N.D. Ill. May 31, 2020) (applying holding to Title VI claim). Because similar liability rules apply in both contexts, the Court agrees that this requirement applies to Collins's Title VI claims. Using caselaw from the analogous Title IX context, Collins must allege and ultimately prove that at least one of an institution's officials with "authority to institute corrective measures" had "actual knowledge" of and was "deliberately indifferent to" the discriminatory conduct of its employees. *See St. Francis Sch. Dist.*, 694 F.3d at 871.

Collins does not cast her allegations in these precise terms, but her pleading alleges both that she experienced racial discrimination at the hands of specific Aurora employees and that she then reported that discrimination to Aurora's Risk Management and security personnel and staff. (ECF No. 22 ¶¶30–32.) And, despite these efforts to escalate her complaints of racial discrimination, Collins alleges that she received no relief from the alleged discrimination. As the Seventh Circuit emphasized in its remand order, Collins is a *pro se* litigant and the Court must read her allegations generously. (*See* ECF No. 17 at 4.) Taking all inferences in her favor, the Court concludes she has adequately pleaded a Title VI claim. Whether she can secure evidence sufficient to survive summary judgment is for another day.

**II.     Collins's Claims Are Not Barred by the Applicable Statute of Limitations.**

Aurora next argues that Collins's Title VI and state law tort claims are untimely. (ECF No. 28 at 11–12.) This argument is without merit as a matter of law and Aurora's effort to seek dismissal on statute of limitations grounds will be denied.

Title VI does not specify a limitations period, but the Seventh Circuit has confirmed that a Title VI claim is analogous to a state claim for personal injuries and should therefore be governed by the limitations period of the forum state for personal injury claims. *Monroe v. Columbia Coll. Chi.*, 990 F.3d 1098, 1099–1100 (7th Cir. 2021). In Wisconsin, that statute is Wis. Stat. §893.53, which provides for a three-year limitations period for claims, like Collins's, that arose after 2018. Collins's claims for negligent retention and supervision, negligence, and defamation are also subject to three-year limitations periods. Wis. Stat. §893.54 (establishing a three-year limitations period for injuries to "the person" generally, including negligence); Wis. Stat. §893.57 (establishing a three-year limitations period for defamation and intentional torts).

Collins alleges that Aurora discriminated against her in July of 2021. (ECF No. 22 ¶¶21, 28–31.) Collins filed this lawsuit, naming Aurora, among a host of other defendants, on April 24, 2024. (ECF No. 1.) That filing was within the three-year statute of limitations.

Aurora's untimeliness argument is based on its erroneous assumption that the statute of limitations is measured based on the date of her second amended complaint—May 28, 2025. (*See* ECF 28 at 12.) Aurora contends that Collins filed two prior "lawsuits" alleging discrimination on April 24, 2024, and July 8, 2024, and that it was not served with either complaint. (*Id.* at 11.) Aurora is confused—these earlier pleadings are not prior lawsuits. The dates cited relate to Collins's initial and first amended complaints in *this lawsuit*. (*See* ECF Nos. 1 & 6.) While Aurora was not served with either prior complaint, that is not the result of any failing by Collins, but because this Court dismissed Collins's prior efforts at screening. (*See* ECF Nos. 3 & 8.) These dismissals do not transform Collins's earlier pleadings into separate lawsuits.

Under Federal Rule of Civil Procedure 15(c)(1)(B), an amendment to a pleading "relates back" to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Collins's Title VI and state law claim all arise out of Aurora's alleged discrimination against her while her mother was receiving care at Aurora St. Lukes—the same conduct alleged in her initial complaint. Accordingly, for statute of limitations purposes, Collins's second amended complaint relates back to the date of her initial complaint—April 24, 2024. Because that complaint was filed within three years of the alleged discrimination incident, Collins's claims are timely.

Aurora contends the relation back doctrine does not apply based on a Wisconsin Court of Appeals case, *Bartels v. Rural Mutual Insurance Co.*, 687 N.W.2d 84 (Wis. Ct. App. 2004). (ECF No. 28 at 12.) But *Bartels* involved a much different factual situation in which a plaintiff failed to timely serve her initial complaint within 90 days of filing, as required under state law, and then tried to resurrect her failed case with an amended pleading filed after the statute of limitations had expired. *Id.* at 88–89. *Bartels* is inapposite. Unlike the plaintiff in *Bartels*, Collins did not fail to serve her initial pleadings such that they became nullities; her prior pleadings were dismissed by the Court at screening. Moreover, *Bartels* is a state court decision interpreting state procedure and therefore has no application to this Court's interpretation of Rule 15. *See id.* at 86–87 (applying Wis. Stat. §§802.09(1) (granting a party the ability to amend its pleadings once within six months of the filing of a complaint and summons), and (3) (the state relation back statute)). While Rule 15 allows for the application of more forgiving relation-back rules provided under state law, it cannot be used to avoid the otherwise applicable federal relation-back principles where state law

provides a less forgiving approach. *See Henderson v. Bolanda*, 253 F.3d 928, 932–33 (7th Cir. 2001). Under Rule 15(c)(1)(B), Collins's second amended complaint relates back to the date of her original pleading and her claims are timely.

### III. Collins Has Not Alleged Actionable Claims Against Aurora Under the WPRA.

Aurora also seeks the dismissal of Count V of Collins's complaint, which asserts state law statutory claims under Wis. Stat. §§51.61 and 146.82. (ECF No. 28 at 13.) In support of these claims, Collins alleges that the actions of Aurora staff in denying her visitation rights, falsely accusing her of misconduct, and refusing to consider "alternative solutions" were "outrageous and extreme." (ECF No. 22 ¶65.) She further alleges that hospital staff acted "with recklessness or intent" in refusing her requests, causing her mental anguish, pain, suffering and other consequences. (*Id*. ¶¶66–67.)

Aurora contends Count V should be dismissed because neither statute that Collins invokes is implicated by her allegations. (ECF No. 28 at 13.) Collins's response brief does not address Aurora's arguments for dismissal of Count V. (*See* ECF No. 29.) As explained below, the Court agrees with Aurora's contentions and the motion to dismiss Count V will be granted.

Wis. Stat. §51.61 is entitled "Patients rights" and largely applies to individuals receiving mental health and related treatments. The statute defines "patient" as "any individual who is receiving services for mental illness, developmental disabilities, alcoholism or drug dependency." Wis. Stat. §51.61(1). It then provides a lengthy list of rights for those individuals, including the right to refuse to perform labor for the benefit of the facility in which they are being treated, *see* Wis. Stat. §51.61(b), the right to send and receive mail, *see* Wis. Stat. §51.61(cm), the right to receive prompt and adequate treatment, *see* Wis. Stat. §51.61(f), the right not to be subjected to non-consensual experimental research, *see* Wis. Stat. §51.61(j), and the right to religious worship, *see* Wis. Stat. §51.61(l). The statute permits any patient whose rights are protected under the statute to bring an action for any violations. *See* Wis. Stat. §51.61(7).

Collins's invocation of Wis. Stat. §51.61 fails for multiple reasons. As an initial matter, Collins does not allege that her mother was a mental health patient within the meaning of this statute. Collins alleges that her mother was admitted to Aurora St. Lukes for bilateral leg pain, malnutrition, and shortness of breath—not for any mental health issues. (ECF No. 22 ¶13.) Moreover, Collins does not allege any actions by Aurora that would have violated any of the long list of rights identified in the statute. Finally, even if Collins had alleged that her mother was a

mental health patient and that Aurora personnel violated a right guaranteed by the statute, Section 51.61 only authorizes claims by the patient, not by family members. *See* Wis. Stat. §51.61(7). As the Seventh Circuit recognized in its screening order, Collins cannot assert claims on behalf of her mother or her mother's estate. (ECF No. 17 at 3 ("[B]ecause Collins is not the sole beneficiary of the estate, she cannot sue on the estate's behalf when proceeding *pro se*.").)

Collins's attempt to assert a claim based on Wis. Stat. §146.82 also fails. Section 146.82 is entitled "Confidentiality of patient health care records." It generally confirms the confidentiality of medical records subject to release in certain circumstances and subject to certain restrictions. *Id*. Aurora correctly notes that Collins's allegations do not implicate this statute.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Aurora's motion to dismiss, ECF No. 27, is **GRANTED in part** and **DENIED in part**. Count V of the Second Amended Complaint is **DISMISSED**. All other requested relief is **DENIED**.

Dated at Milwaukee, Wisconsin on November 18, 2025.

                                              s/ *Brett H. Ludwig*
                                              BRETT H. LUDWIG
                                              United States District Judge